IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ROCK CREEK HYDROPOWER, INC., | ) ) ) | Case No. CV-04-0556-S-BLW |
| Plaintiff, | ) ) | **MEMORANDUM DECISION AND ORDER** |
| v. | ) ) ) | |
| ENEL NORTH AMERICA, INC., CHI WESTERN OPERATIONS, INC., and CHI OPERATIONS, INC. | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it various motions, including cross-motions for

summary judgment.  The Court heard oral argument on January 10, 2006, and took

the motions under advisement.  For the reasons expressed below, the Court will

find as a matter of law that the Consent Agreement is ambiguous and may be

interpreted by reference to extrinsic evidence.  The Court will also grant

defendants' request to add CHI Finance LLC as a party defendant.  In all other

respects, the motions will be denied.

**Memorandum Decision and Order – Page 1**

## BACKGROUND FACTS

In 1986, plaintiff Rock Creek leased real property and other rights to Bonn-Tech so that it could construct a hydro-electric project on the property.  The parties set forth the terms of their agreement in a written Lease Agreement.  It included a formula for calculating the payments due to Rock Creek once the project began operation.  The formula provided that Rock Creek would be paid a royalty consisting of a percentage of the gross annual revenue from the project.

Those royalties were divided into two time periods.  Period One would last for 15 years, followed by Period Two that would last 20 years.  The royalties due to Rock Creek were higher in Period Two, as the percentage rose from 15% of gross annual revenues on the first 11.7 million kilowatt hours to 30%.

The Lease Agreement stated in Section 6A that royalties payments in Period One were subordinated to payments due to the banks for debt service.  The Lease Agreement did not provide for any similar subordination during Period Two.

In 1990, the debt was refinanced.  By now, BP Hydropower had bought out Bonn-Tech, and the debt was held by Fuji Bank.  As a condition of the refinancing, Fuji Bank required Rock Creek and BP Hydro to enter into a Consent to Assignment and Ratification Agreement on August 22, 1990.

Paragraph 4(d) of the Consent Agreement states that Rock Creek agrees that

**Memorandum Decision and Order – Page 2**

its rights "to receive certain payments set forth in Section 6 of the Lease . . . are subordinate and junior in right" to Fuji Bank's right to payment on the debt.  By referring to Section 6 of the Lease Agreement without making any distinction between First Period and Second Period royalties, Paragraph 4(d) appears to make a major modification of the Lease Agreement by subordinating not only First Period royalties but also Second Period royalties.

In later years, Fuji Bank sold its interest in the debt to CHI Finance Inc., that later became CHI Finance LLC, the entity that now holds the debt.  The current owners of BP Hydro appear to be CHI-Idaho and CHI-Magic Valley, which are subsidiaries of defendant Enel North America.

When Period Two began and Rock Creek was not paid its royalties, it brought this suit against Enel and the CHI entities.  The parties have filed cross-motions for summary judgment seeking to determine whether the Second Period royalties are subordinated.  Enel also asserts that CHI Finance LLC must be added as a defendant or else this action must be dismissed, and further seeks the dismissal of defendants Enel North America and CHI Western Operations due to a lack of proof that they are liable to Rock Creek in any manner.

## ANALYSIS

The cross-motions for summary judgment require an interpretation of the

**Memorandum Decision and Order – Page 3**

Consent Agreement.  Defendants (hereinafter collectively referred to as Enel) argue that ¶ 4(d) of the Consent Agreement should be interpreted to require that Second Period royalties be subordinated to debt held by CHI Finance LLC.  The effect of this interpretation is that Second Period royalties, otherwise payable to Rock Creek, would be paid instead to CHI Finance LLC to pay off the existing debt of the project.

The Court agrees that this is one reasonable interpretation of ¶ 4(d).  So interpreted, ¶ 4(d) is a major modification of the Lease Agreement that did not subordinate Second Period royalties.

This interpretation, however, runs headlong into a completely contradictory provision contained in ¶ 6 of the Consent Agreement.  That paragraph states that nothing in the Consent Agreement should be deemed to modify the Lease Agreement.  Rock Creek argues that ¶ 6 should take primacy over ¶ 4(d), while Enel argues just the opposite.

There is nothing, however, within the four corners of the Consent Agreement that harmonizes these two conflicting paragraphs.  The Consent Agreement is therefore ambiguous.  To interpret an ambiguous contract, the Court may rely on extrinsic evidence.  *See Albee v. Judy*, 31 P.3d 248, 252 (Idaho 2001).

One crucial piece of extrinsic evidence is a letter of August 6, 1990, sent to

**Memorandum Decision and Order – Page 4**

Rock Creek by the drafter of the Consent Agreement, attorney Gary Montgomery, who was representing BP Hydro at the time.  That letter states that ¶ 4(d) of the Consent Agreement describes a "limited subordination consistent with the language in paragraph 6A of the Lease."  To be consistent with paragraph 6A of the Lease, the royalty payments would not be subordinated during the Second Period.  The drafter confirms that reading in the very next sentence of his letter: "Ms Houghton assures me that the Bank will not require [Rock Creek] to subordinate more than it is already required to subordinate under said paragraph 6A."[1]

Montgomery's letter represents that Second Period royalties were not subordinated under the Consent Agreement.  This interpretation is corroborated by the defendants' own 1995 memo concluding that only the First Period payments

---

[1] There are two levels of potential hearsay in this letter.  The first level is Montgomery's statement that paragraph 4(d) provides for only a limited subordination consistent with paragraph 6A of the Lease.  The second level is Montgomery's statement that the Fuji Bank official, Ms. Houghton, confirms his reading.  The Court finds, however, that neither statement is hearsay when offered for the purpose of determining the intent of the parties in forming the Consent Agreement.  The statements are not offered for their truth, but are instead offered as a representation of the draftsperson made at the time of contract formation and relied upon by the other party in reaching an agreement.  It is the fact that the statements were made, and relied upon, that is the key rather than their literal truth.  Thus, they are non-hearsay under Rule of Evidence 801(c).  Moreover, Montgomery's statement at the first level would be non-hearsay under Rule 801(d)(2) as it is a statement of defendants (as BP Hydro's  predecessors-in-interest), being offered against the defendants.  Once CHI Finance LLC (Fuji Bank's predecessor-in-interest) is joined as a party, as discussed further below, Montgomery's second level of hearsay (regarding Ms. Houghton's confirmation) will also be non-hearsay under Rule 801(d)(2).  The Court will therefore deny Enel's motion to strike.

**Memorandum Decision and Order – Page 5**

were subordinated under the terms of the Lease and Consent Agreement.

While this extrinsic evidence strongly favors Rock Creek, the Court is reluctant to grant summary judgment.  The interpretation of an ambiguous contract is "a question of fact which focuses on the intent of the parties" and is typically a jury question.  *Id*. at 252.  Moreover, an entity with a substantial stake in the controversy – CHI Finance LLC – is not before the Court.  Obviously, CHI Finance LLC will be prejudiced by a ruling that it is not entitled to subordination of Period Two royalties.  The Court is reluctant to issue a decision so prejudicial to CHI Finance LLC without ever hearing from them.

It is true that CHI Finance LLC is a wholly-owned subsidiary of Enel, a party defendant here.  However, until a contrary showing is made, the Court must treat CHI Finance LLC as a separate legal entity from Enel.  While the Court is concerned that CHI Finance LLC itself did not move to intervene, Enel has now moved that they be joined, and the importance of their presence requires that the Court grant that motion.

The Court will therefore deny in large part the summary judgment motions of both parties.  The Court will find, as a matter of law, that the Consent Agreement is ambiguous, and that extrinsic evidence must be examined to determine the intent of the parties.  The Court will reserve ruling, however, on the

**Memorandum Decision and Order – Page 6**

issue whether the extrinsic evidence favoring Rock Creek's interpretation of the Consent Agreement is so substantial as to justify granting Rock Creek summary judgment. Because the Court is adjudicating the interest of CHI Finance LLC in the Consent Agreement to which its predecessor-in-interest was a signatory, the Court will order that CHI Finance LLC be joined as a party defendant under Rule 19.

The Court will give CHI Finance LLC a 60-day period to conduct discovery concerning the intent of the parties to the Consent Agreement. This period will commence to run upon the date CHI Finance LLC files its first document in the case. All dispositive motions must be filed thirty days following the close of this limited discovery period. The dispositive motions will be limited to addressing (1) the extrinsic evidence supporting Rock Creek's contention that the parties did not intend to subordinate the Second Period royalties, (2) any extrinsic evidence suggesting that the parties did intend such subordination, and (3) whether there is any disputed issue of material fact regarding the intent of the parties in drafting the Consent Agreement.

Finally, Rock Creek has filed a motion to amend its complaint to add a cause of action alleging that the corporate veil of named defendants should be pierced. Allegations concerning piercing the corporate veil do not constitute a new cause of

**Memorandum Decision and Order – Page 7**

action but only provide a means for proving claims already made against parties already named.  *Peacock v. Thomas*, 516 U.S. 349, 354 (1996).  On this basis, the Court will deny the motion to amend.

The Court will not at this time resolve the dispute over whether defendants Enel North America and CHI Western Operations should be dismissed.  The Court will need to hear further argument – and gain a greater understanding – of the somewhat confusing array of entities involved in this litigation.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for summary judgment filed by Rock Creek (Docket No. 30) is GRANTED IN PART AND DENIED IN PART.  It is granted to the extent is seeks a ruling that the Consent Agreement is ambiguous and must be interpreted by reference to extrinsic evidence.  It is denied in all other respects.

IT IS FURTHER ORDERED, that the motion to dismiss or for summary judgment filed by Enel (Docket No. 32) is GRANTED IN PART AND DENIED IN PART.  It is granted to the extent it seeks to order that CHI Finance LLC be joined as a party defendant.  It is denied in all other respects.

IT IS FURTHER ORDERED, that CHI Finance LLC be joined as a party

defendant, and that Rock Creek take the steps necessary to effect service on this new party.

IT IS FURTHER ORDERED, that CHI Finance LLC shall be permitted a period of sixty days for discovery.  This period shall commence to run upon the date that CHI Finance LLC files its first document in this case.  Within thirty days after the close of discovery, the parties shall file any dispositive motions limited solely to the issue of what the parties intended in the Consent Agreement.

IT IS FURTHER ORDERED, that the motion to amend (Docket No. 40) is DENIED.

IT IS FURTHER ORDERED, that the motions to strike (Docket Nos. 38 and 42) are DENIED.

IT IS FURTHER ORDERED, that the motion to cite unpublished decision (Docket No. 39) is DEEMED MOOT.

DATED:  **February 7, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order – Page 9**