IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROCK CREEK HYDROPOWER, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ENEL NORTH AMERICA, INC., a ) <br> Delaware Corporation; CHI WESTERN ) <br> OPERATIONS, INC., a Delware ) <br> Corporation; CHI-IDAHO, INC., a ) <br> Delaware Corporation; CHI-MAGIC ) <br> VALLEY, INC., a Delaware Corporation; ) <br> ABC CORPORATIONS, PARTNERSHIPS,) <br> ASSOCIATIONS, COMPANIES, OR ) <br> ENTITIES 1 - 10, whose true identities are ) <br> unknown; and JOHN and JANE DOES ) <br> 1 - 10, whose true identities are unknown, ) <br> ) <br> Defendants. ) <br> _____) | Case No. CV-04-556-S-BLW <br><br> **MEMORANDUM DECISION** |

## INTRODUCTION

Plaintiff Rock Creek and defendant CHI Finance LLC have moved for summary judgment.[1]  The Court heard oral argument and took the motions under advisement.  For the reasons expressed below, the Court will grant Rock Creek's

---

[1] CHI Finance did not file a formal motion but did request in its briefing that the Court "enter summary judgment in CHI Finance's favor on its counterclaim . . . ."  *See CHI Finance Brief* at p. 20.

**Memorandum Decision – Page 1**

motion and deny CHI Finance's motion.

## LEGAL STANDARDS

The party moving for summary judgment has the burden of proving the absence of any genuine issue of material fact that would allow a judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility determinations.  *Id.*

This standard remains applicable even though the court was presented with cross-motions for summary judgment.  *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).  Each movant has the burden of presenting evidence to support its motion that would allow a reasonable jury to find in its favor.  *Id*.  *See also Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1094 n. 3 (9th Cir. 2006).

In interpreting ambiguous contractual provisions, evidence that raises reasonable conflicting interpretations creates issues of fact that require resolution by the trier of fact.  *Bondy v. Levy*, 829 P.2d 1342, 1348 (Id. Sup. Ct. 1992).

## ANALYSIS

The Court will not repeat its earlier analysis, but will summarize its findings. The Court found that the Consent Agreement is ambiguous.  Rock Creek and BP

**Memorandum Decision – Page 2**

Hydro had earlier signed a Lease that provided that only First Period royalties would be subordinated to a construction loan.  When the loan was refinanced with Fuji Bank, a new agreement, known as the Consent Agreement, was signed that gave mixed signals on subordination.  On the one hand, ¶ 4(d) of the Consent Agreement appears to work a major modification of the earlier-signed Lease by providing that Rock Creek agrees to subordinate Period Two royalties to the Bank.  On the other hand, ¶ 6 of the Consent Agreement states that the Lease is not being modified in any respect.

Because of this ambiguity, the Court found that extrinsic evidence could be examined to determine the intent of the parties.  One crucial piece of extrinsic evidence is a letter of August 6, 1990, prepared by the drafter of the Consent Agreement, attorney Gary Montgomery, who was representing BP Hydro at the time.  This letter was written about two weeks before the Consent Agreement was signed.

The letter states that ¶ 4(d) of the Consent Agreement describes a "limited" subordination that applies only to ¶ 6(a) of the Lease – the First Period subordination.  Montgomery goes on to state that a paralegal with BP Hydro, Teresa Houghton, "assures me that the Bank will not require [Rock Creek] to subordinate more than it is already required to subordinate under paragraph 6(a)."

**Memorandum Decision – Page 3**

Even if this latter statement is hearsay and cannot be considered for its truth, it still has relevance. The letter contains a notation that it was copied to the Bank's counsel, Steven Eisenberg, and there is no evidence that Eisenberg – or anyone at the Bank – objected to Montgomery's characterization of the Bank's position.[2] About two weeks later, the Bank signed the Consent Agreement.

Also crucial is a document dated October 25, 1990, and entitled Amendment to Rock Creek #2 Water Project Agreement and First Amendment to Agreements ("First Amendment"). In paragraph F, the document states that the "parties" agreed that Rock Creek's "royalty interest under the Agreement, during Period One as defined by the original Agreement and its amendments, are [sic] subordinated to . . . the full Fuji Bank loan . . . ." This document corroborates Montgomery's letter of August 6, 1990, and shows that at least as to Rock Creek and BP – the "parties" to this First Amendment – only First Period royalties were to be subordinated to the Fuji loan.

While nobody from Fuji Bank signed the First Amendment, the Bank received a copy of that document. *See Exhibit C to Houghton Affidavit.* Once again, the Bank was aware of the position of Rock Creek and BP that only First

---

[2] In an earlier opinion the Court mistakenly assumed Houghton was a Bank employee. The Court withdraws that statement.

**Memorandum Decision – Page 4**

Period royalties were subordinated, and made no objection.

Of course, the Bank (and its successors-in-interest) could harbor a silent objection, waiting for litigation to spring their contrary interpretation on Rock Creek. However, their own internal memoranda indicate that they agreed with Rock Creek. For example, Don Jarrett of CHI Energy Inc.,[3] concluded, after reviewing the agreements, that he "could not find anything in the agreements we have which will subordinate lease payments during the second period." A month later, Shirley Kershaw of CHI Energy Inc. also concluded that "the royalty is subordinated to debt service until year 17," meaning the First Period. Almost two years later, Kershaw had not changed her analysis, again concluding that while royalties were "deferred" in the First Period, "there is no provision for deferral" in the Second Period. *See Attachments to Affidavit of Tolman at Exhibit A.*

Ignoring its past interpretations, CHI Finance now argues that Rock Creek must have agreed to subordination of Second Period royalties because that is the only explanation for why Rock Creek demanded that BP Hydro amend the Lease to

---

[3] CHI Energy Inc is the predecessor in interest to defendant ENEL. ENEL is the sole member of CHI Finance. Dan Jarrett is, according to defendants' interrogatory answers, a former employee who reviewed the relevant contractual arrangements. *See Answers to Interrogatories Attached to Tolman Affidavit* at ¶ 3, p. 5.

**Memorandum Decision – Page 5**

extend the Period One recapture provision out to year 25.[4]  In making that demand, CHI argues, Rock Creek must have reasoned as follows: (1) Period Two would begin in May 2005; (2) The Bank loan must be paid in full by June, 2007; (3) Having agreed to subordinate Second Period royalties to the Fuji Bank loan, Rock Creek must have realized that it would probably not be paid any royalties between May 2005 and June 2007; (4) This reduced Rock Creek's chances of getting paid as much of the deferred royalties before they would be forgiven at the end of year 20; and (5) Therefore, Rock Creek demanded that BP Hydro amend the Lease to extend the recapture provision to year 25.

This is complete speculation.  Most telling is the complete absence of anyone willing to testify in support of CHI's theory.  For example, if Fuji Bank officials struck an agreement with Rock Creek to subordinate Second Period royalties, why is nobody willing to so testify?  Why are there no documents from Bank officials, or anyone else for that matter, stating their intent to subordinate Second Period royalties?  Given that the Bank and its successors were subjected on numerous occasions to contrary interpretations – both internally and by Rock

---

[4] Rock Creek and BP Hydro had a prior agreement that if revenues were insufficient to make royalty payments to Rock Creek in Period One, the royalties would "accrue" and be paid out during the Second Period years 17, 18, 19, and 20 (known as "recapture").  Any unpaid Period One royalties that remained owing at the end of 20 years would be forgiven.  Later, the parties agreed to extend recapture out to the 25th year.

**Memorandum Decision – Page 6**

Creek and BP Hydro – why can't the defendants produce a single document where they defended their position that Second Period royalties were subordinated?

Instead, CHI Finance relies on a theory. No person stands behind it. No document supports it. A jury deciding its worth would be left entirely to conjecture.

The Court "need not draw *all* possible inferences in [CHI Finance's] favor, but only reasonable ones." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 n. 10 (9th Cir. 2002)(emphasis in original). A reasonable inference is one based on more than "mere speculation, conjecture, or fantasy." *Id*. (quoting *O.S.C. Corp. v. Apple Computer*, 792 F.2d 1464, 1466-67 (9th Cir. 1986)).

Here, the extrinsic evidence shows that the drafters of the Consent Agreement intended to subordinate only First Period royalties, as had been done under the prior Lease agreement. While the Court must grant to CHI Finance all reasonable inferences from the evidence, CHI Finance has a theory with no supporting evidence. The theory is speculative. Under *Villiarimo*, neither the Court nor a jury could make reasonable inferences based on a speculative theory.

A similar analysis prevails under the Idaho law concerning contract interpretation. While "reasonable conflicting interpretations" create jury issues, *Bondy*, 829 P.2d at 1348, the Court finds that CHI Finance's interpretation is not a

**Memorandum Decision – Page 7**

reasonable one.

    For these reasons, the Court will grant summary judgment to Rock Creek and deny CHI Finance's request for summary judgment.  The Court will issue a separate Judgment pursuant to Rule 58(a)(1).

DATED:  **August 25, 2006**



_____
B. LYNN WINMILL
Chief Judge
United States District Court